UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA CITY DIVISION

ROYAL SURPLUS LINES INSURANCE
COMPANY,

    Plaintiff,

vs.                              CASE NO. 3:03cv419/RS/MD

DELTA HEALTH GROUP, INC.,

    Defendant.
_____/

## ORDER

Before me are cross-motions for summary judgment (Docs. 166 and 167) and the parties' subsequent responses (Docs. 173 and 174).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the

nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (*citing Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)). However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

## II. BACKGROUND

Summary judgment was previously granted for Plaintiff. (Docs. 98 and 107). All factual and legal findings in the summary judgment order dated January 23, 2006 (Docs. 98 and 107) are incorporated in this Order. It has been previously determined that Defendant is responsible for defending and paying any gap in the underlying coverage from April 17, 2000 to June 19, 2000 before Plaintiff's umbrella coverage (RU2) is triggered, and Plaintiff has no duty or obligation to provide indemnity or defense to Defendant within the $1 million SIR plus defense costs for the period between June 19, 2000 to December 31, 2000.

Based on this finding, Plaintiff asserts that Defendant must reimburse Plaintiff for six particular claims. Each will be addressed in turn.

### III. CYNTHIA BENNETT

This particular case settled for $2,500,000. Royal Primary paid $1,000,000, and RU2 paid $1,500,000. Cynthia Bennett, a resident at Defendant's facility, was impregnated by a Defendant's employee in April of 2000. Defendant did not discover Bennett's pregnancy so she was not provided prenatal care. Plaintiff argues that Defendant is responsible for the first $1,000,000 of the $1,500,000 that RU2 paid. The RU2 policy pays "those sums in excess of the retained limit…" The retained limit is $1,000,000 per occurrence. According to the RU2 policy, an "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful condition. Here, there was one occurrence with continuous harm.

Royal Primary paid $1,000,000 as the primary insurance policy. Since the settled amount was in excess of $1,000,000, RU2 was responsible for the remaining sums up to its policy limit, which was well above $1,500,000. While there could have been an issue as to the person responsible for the underlying insurance based on the impregnation date, Royal Primary chose to represent Defendant and triggered the umbrella policy. Plaintiff has not made a claim that

Defendant should reimburse Plaintiff for the money paid from the Royal Primary policy, only the RU2 policy. Therefore, RU2 paid $1,500,000 as required by its policy and Defendant is not responsible for reimbursing Plaintiff.

## IV. ROSA COLLAZO

Plaintiff seeks $173,686.00 from Defendant for the $165,000 settlement and $8,686.00 incurred expenses that Plaintiff paid on Rosa Collazo's claim. Collazo suffered three injuries as a resident at Defendant's facility. All injuries occurred after April 17, 2000, and before December 31, 2000. Defendant argues that Plaintiff voluntarily paid the settlement for its own benefit so it is not entitled to reimbursement. It was previously determined and affirmed by the Eleventh Circuit that Delta is responsible for defending and paying any gap in the underlying coverage from April 17, 2000, to June 19, 2000, before Royal's umbrella coverage is triggered, and Royal has no duty or obligation to provide indemnity or defense to Delta within the $1 million SIR plus defense costs for the period between June 19, 2000 to December 31, 2000. Plaintiff will not be punished for acting as a responsible insurance company. Therefore, Plaintiff is awarded $173,686.00.

## V. DOROTHY COURSEN

This particular case settled for $3,000,000. Lexington, the primary insurer, paid $950,000, and RU2 paid $2,050,000. Dorothy Coursen, a resident at

Defendant's facility, died on August 10, 2000, from ingesting cleaning fluid. Plaintiff seeks $50,000 from Defendant for the difference between Defendant's SIR and the settlement reached plus defense costs of $4,522.02. Defendant argues that Plaintiff should "stand in the shoes" of Defendant and sue Lexington for bad faith. While it is unclear whether Plaintiff would have such a claim, Plaintiff has no obligation to succeed to the rights and responsibilities that the insured would normally have against the primary insurer. *See Auto-Owners Ins. Co. v. American Yachts, Ltd.*, 492 F.Supp.2d 1379 (S.D. Fla. 2007).

There is no question that this occurrence was after June 19, 2000. Royal has no duty or obligation to provide indemnity or defense to Delta within the $1 million SIR plus defense costs for the period between June 19, 2000 to December 31, 2000. Therefore, Plaintiff is awarded $54,522.02.

## VI. KENNETH McNEALY

Plaintiff seeks $64,062.50 from Defendant for the portion of the settlement RU2 paid in Kenneth McNealy's case. McNealy, a resident of Defendant's facility from April 13, 1998, to June 17, 2001, suffered pressure ulcers, suffered multiple falls, and infections throughout his residency. The case settled in total for $187,500. Royal Primary paid $50,000; St. Paul paid $9,375; RU1 paid $64,062.50; and RU2 paid $64,062.50. Plaintiff states that the exhaustion of

Lexington's primary coverage required RU2 to step in and pay the remainder, but, based on my prior determinations, the amount is properly recoverable from Defendant. However, my prior findings regarding Delta's responsibilities were for occurrences from April 17, 2000, to December 31, 2000. The settlement was for Defendant's overall failure to properly care for Kenneth McNealy which occurred from the beginning of his residency and continued throughout his stay. The $64,062.50 paid by RU2 was not for an occurrence from April 17, 2000 to December 31, 2000. Therefore, Plaintiff is not entitled to reimbursement.

## VII. MARY ELLEN ROBINSON

This particular case settled for $4,000,000. Lexington, the primary insurer, paid $100,000, and RU2 paid $3,940,967.70 for the settlement and defense costs. Mary Ellen Robinson, a resident at Defendant's facility, sustained injuries on May 29, 2000, that eventually resulted in her death. Plaintiff seeks $940,967.70 from Defendant for the gap in the underlying coverage before Royal's umbrella coverage was triggered and the defense costs.

Defendant argues that Plaintiff was not authorized to commit Defendant's personal assets to a settlement. Plaintiff was not obligated to contribute anything towards a settlement unless Defendant and Defendant's primary insurance paid $1,000,000. Plaintiff could have refused to settle and would have had no exposure.

Plaintiff voluntarily chose to settle, and Defendant owes nothing. Defendant cites *City of Miami v. Keton* for support, a class suit for reimbursement from city fines paid for traffic violations. *City of Miami v. Keton*, 115 So.2d 547 (Fla. 1959). Defendant should reconsider using such citations to show support.

In this matter, the RU2 policy dictates the rights and responsibilities between Plaintiff and Defendant. The RU2 policy states on the first page:

> 2. [Plaintiff] will have the right and duty to defend any "suit" seeking those damages when:
>
> > (a) The applicable limits of insurance of the "underlying insurance" and other insurance have been used up in the payment of judgment or settlements; or
> >
> > (b) No other valid and collectible insurance is available to the insured for damages covered by this policy.
>
> Our right and duty to defend end when the applicable limit shown in the declarations has been used up by our payment of judgments or settlements. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance does not apply.

Plaintiff clearly had the right, at its discretion, to settle this case. Defendant's primary insurance, Lexington, could only contribute $100,000 towards settlement, and no other valid and collectible insurance was available. Defendant cannot unilaterally alter the terms of the agreement by forbidding

Plaintiff from settling this case.  Defendant is responsible for defending and paying any gap in the underlying coverage from April 17, 2000 to June 19, 2000 before Plaintiff's umbrella coverage (RU2) is triggered.  Plaintiff is not receiving a windfall; Defendant breached the agreement.  Had Defendant complied with the terms of the agreement, it would not be responsible for the gap in the underlying coverage.  Therefore, Plaintiff is awarded $940,967.70.

## VIII. SALLIE JO MOSES

Plaintiff seeks $10,000.00 from Defendant for its SIR properly invoked under the RU2 policy.  Sallie Jo Moses was a resident of Defendant's facility from November 11, 1995 to February 12, 2000.  Plaintiff argues that since Royal Primary was properly exhausted, RU2 had a duty to defend Defendant, but Defendant was required to pay $10,000 SIR.  Defendant admits it owes Plaintiff $10,000.00.  However, Defendant argues that Plaintiff never billed Defendant, and without a bill, Defendant was not obligated to pay.  However, under the terms of RU2, Plaintiff is not required to bill Defendant.  Therefore, Plaintiff is awarded $10,000.00.

**IT IS ORDERED:**

1. Plaintiff, Royal Surplus Lines Insurance Company's Response to Defendant's Motion for Summary Judgment on Damages (Doc. 167) is **GRANTED IN PART, DENIED IN PART**.

2. Defendant's Motion for Summary Judgment (Doc. 166) is **GRANTED IN PART, DENIED IN PART**.

3. The clerk is directed to enter a judgment in favor of Plaintiff for $1,179,175.72.

4. The clerk is directed to close the file.

**ORDERED** on July 15, 2009.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**